We have four cases on the calendar this morning. Two from the Patent and Trademark Office. A patent case from the District Court. A case from the Court of Federal Claims involving military. And that case will be submitted on the briefs and not be argued. The first case is Technologies Holdings v. Abatement Technologies, 2013-1661. Counselor, could you help us a little bit with the pronunciation of your name? Sure. My name is Attorney Aaron Olanichek. Olanichek. Thank you. Please proceed. Mayor's Police and Court. Good morning, Your Honors. Abatement and the USPTO, the board and the examiner in this case, failed to meet their burden in establishing a prima facie case of obviousness in this reexamination. And particularly, the USPTO erred in claim construction as a matter of law. It did not adopt the correct construction. And we respectfully assert that this court should do so to give the claims their proper public notice effect. And I will refer to Judge Lurie's decision in the Hemantics case. Well, what you're referring to is a decision of mine. It's a decision of a panel representing the court. Yes, to the panel in the Hemantics case, which states that claims fail to give notice if their language is superfluous. Here, in the claims at issue on reexamination, particularly independent claims 12, 25, and 26, the board erred by construing the limitation in parallel with, as meaning either parallel flow or geometrically parallel. Is your argument before us that in parallel with has two different meanings within the claim? That's correct, Your Honor. Did you make that argument below? Yes. In fact, I can point the board to three instances below, and that technologies that are in claim construction is not in any way waived. First, the O'Brien Declaration, which was submitted to the examiner in paragraph 27 in 2010, indicates this. Can I see the record? Yes. Because I've got your briefs on appeal and your rebuttal brief on appeal, which I think you're going to cite. Where's O'Brien, please? So the O'Brien Declaration, paragraph 27 is cited in full at A1469, which is in reference to our brief. It's cited in full into the brief. A1469, paragraph 27. Yes, and there you can see paragraph 27. And we're in that. We're in paragraph 27. So it states that a unique feature of the thermistor, that's technologies holding systems, having a combination of the bypass and heat exchange airflow pass, is that the fourth segment, the bypass, is substantially geometrically parallel with the first sub-segment, the second segment, and the fourth sub-segment of the exchange path. And this language between segment and sub-segment is really what's important in examining the language of the claims. And where is the other meaning for parallel in that 27? The other meaning for parallel is not in here. And, Your Honor, I do not believe that there's any dispute that the other meaning of parallel is something that's disclosed and present in the specification. Right, right. But in terms of what you were presenting to the board for its decision, this comes in the form of your brief on appeal and your reply brief. Correct. And both of those, you said, it means both. Well, no, Your Honor, and I will refer you to our rebuttal brief on appeal, particularly pages 1894 and 1895. Can you tell me what page it was in the brief? Sure, pages 2 and 3. And starting at the bottom of page 2, we state that the first, second, and third segments, as well as the first, second, and third and fourth sub-sections, that's a typo, it should be sub-segments, are all in parallel flow configuration. So we recognize that the sub-segments, which are part of the segments, must be by definition in parallel flow configuration with the fourth sub-segment. But then we continue to state to the board that under the erroneous claim interpretation, the examiner and respondent, it would be completely redundant, i.e. it would be superfluous for Claim 12 to additionally specify that the fourth segment is in parallel with each of the first and fourth sub-segments. And this erroneous interpretation would be utterly superfluous and therefore meaningless unless... Could I ask a question? Does your 103 argument hinge on what you perceive to be the claim construction error? Yes, it does. For example, if we were to disagree with you and say we thought the board got the claim construction correct, notwithstanding whether you had presented the issue below, then do you still have an argument on 103 based on the claim construction adopted by the board? If the court adopts the board's claim construction, then I believe our entire case rises and falls with that claim construction. So your 103 appeal hinges on us agreeing with you that the board erred on its claim construction? That is correct, Your Honor. Okay, thank you. I just cleared my head. Yes. So in addition to Mr. O'Brien's declaration, the first appeal brief and the rebuttal brief, all at the Patent Office, have references to this claim construction. For the first appeal brief, I'll just briefly point the court to pages A1469 and A1475. Since the claim construction issue seems to be dispositive of the appeal, if we look at page A13, it's page 12 of the board's opinion. At the top, the board is saying, thus the patent owner argues that both meanings, which are not exclusive of each other, apply to the limitation. So as I understood what the board was saying is they thought that in parallel with, had to mean from your perspective, both geometric as well as at the same sequential, at the same time, and that they weren't exclusive of one another. Whereas the interpretation you're arguing to us is that they are exclusive of each other, that in parallel with means one thing with regard to one limitation, and it means a different thing with regard to the other. I think it's slightly more nuanced. So what I'm trying to get at is how did the board misunderstand what you feel was, what you clearly presented to them? Because there is language in your brief where you say it means both, right? So there is language in there where we say that under the broadest reasonable construction standard, which we assert is an examination standard, that this and language, parallel flow and geometrically parallel relationship would work. However, when you look at the context of the claims, and you realize that the second occurrence of in parallel with would be redundant and superfluous in light of the fact that the sub-segments that are being discussed with respect to the second occurrence are subsumed within the segments that are being discussed in the first occurrence, then we understand that the second occurrence must be compelled to mean geometrically parallel. Otherwise, that claim language would fail to provide the notice function. And in that respect, I'll point to a case, Adventsis Pharmaceuticals 715F3D 1363, which holds that the same claim term can have different constructions depending on the context of how the term is used within the claims and the specification. And in this case, I think that's precisely what's occurring. In a vacuum, yes, in parallel with, all parties realize that in parallel with in a vacuum can be very broad. But when you look at it with respect to the relationships with the other terms in the claim, if they both mean either or, it fails to provide notice to the public as to what is being claimed here. And that, we feel, is something that needs to be clarified. We don't want to have claims that are indefinite. We certainly want the public to know. So instead of either or, you want us to insert the word and, to have two separate meanings for the same claim term. It would be the two different meanings, yes. But below it seems, and looking at what you just showed us, it seems that below you were arguing that one meaning was subsumed into the other, that there was only one meaning. And that's my point. In the broad context, the one meaning of in parallel with would be and. It can mean this and this. And that's consistent with the claim language. But when you look at the way that in parallel with is used in context with the other words of the claims, the first instance shows this parallel flow relationship. And the second instance claims the geometrically parallel. I understand how that would operate. I think the question is whether you actually argued this below, whether the argument you're giving us now, two separate meanings, same claim term, whether you actually made that argument before the board. Right. And I believe that it's replete in the boards, in our position before the board. And where you can really see this language is when you look at the claim language directed to segments versus the claim language directed to subsegments. Consistently, we assert that the segments are in this parallel flow relationship. And then we consistently argue that the subsegments are in a geometrically parallel relationship with one another. And there are a number of places in our brief on appeal to the USPTO where we make this distinction. Pages 1468, 1469, 1471, 1476, 1479, and 1482, all distinguishing this construction from the prior art that is asserted against us. So we believe that construction is not waived. We believe it's fully asserted at the USPTO. And we respectfully assert that this court should construe the claim language such that the second instance of in parallel with denotes, connotes a parallel flow relationship. Now, one other point that I wish to rebut is that Technologies Holdings never conceded the USPTO construction was the broadest reasonable construction. We conceded that the broadest construction would be either or, but we asserted that that is not the most reasonable construction. And again, all of these citations to the record that I've noted to the court illustrate that the reasonable construction requires this differentiation to remove any super- And as we're saying, in parallel with depends upon the context. Absolutely, Your Honor, yes. To be straight with you, the problem I have is that in both your reply brief, in your brief and your reply brief, your brief at page 10 and your reply brief at page 2, you say the examiner made the mistake. The correct interpretation is that in parallel with requires both a parallel flow and a geometrically parallel configuration, said that in both instances. It didn't go on to say it requires both, depending on the circumstances, it will mean one thing in one limitation and one thing in the other. Well, Your Honor, I think the simple explanation is it can mean both in both instances. But I mean, as you've made clear in your briefs, it is markedly different. If I think the way the board looked at this, they were saying in both of the limitations where in parallel with shows up, it has to mean both. From your perspective, it had to mean both, both geometrically and also along the same path, right? Correct. The board didn't understand. You were saying, oh, no, it means two things. It doesn't mean both in each instance. It means two different things, one or the other, depending on the context. And so the sharpness with which you have refined the argument here on appeal strikes me as it might have been difficult for the board to appreciate that sharp distinction from the language that was used in your briefs. Well, again, I think the sharpness of the declaration doesn't really help me because it just picks one side of the equation. And, Your Honor, I will again point to the sharpness. I think it is very well defined in our rebuttal brief on appeal. The pages two and three that I had mentioned earlier, where we indicate that it would be completely redundant, utterly superfluous and meaningless unless the second instance is construed to mean geometrically parallel. Counsel, you want to save a minute for rebuttal? Yes, Your Honor. We'll give you a minute for rebuttal. Thank you. We'll hear from appellee, Mr. Holloway. Thank you, Judge Lurie. Panel, may it please the court. My name is Clay Holloway and with me is Renee Rain White. We represent the appellee abatement technologies. THC brought before this court three errors that it believes that the PTO engaged in below. The first was already discussed a little bit, and that's the claim construction and the broadest reasonable interpretation. The second two errors was that the first being that whether under that proper construction of either parallel flow relationship or a geometrically parallel relationship, there was sufficient evidence below for a reasonable fact finder to come to the conclusion that the board did, which is that claims 12, 25, and 26 are obvious. The third error that THC briefed was whether the board erred in how it got there, whether it relied on declaration of Mr. Brown improperly, or it failed to consider the evidence put forth in Mr. O'Brien's declaration. It's our position that none of those errors occurred. The board was correct in its broadest reasonable interpretation. Under that standard, the board chose either parallel flow relationship in both recitations within claim 12. There is no dispute. You heard counsel for THC say that there is no dispute that in the first instance it would mean a parallel flow relationship. The second instance within claim 12 and 25 is where the dispute before this court arises. It's our position, as some of the questions indicated, that there was waiver below. It was never articulated below that there was a context-specific read within claims 12 and 25 regarding the terms in parallel with. We would support that the pages pointed to at 2 and 3 of the rebuttal belief below are just emphasizing that the argument that they were making to the board was that it meant both, in both instances, parallel flow and geometrically parallel. There are issues with that construction, just as there are issues with the newly proposed construction before this court. I'll begin with the newly proposed construction. It is not superfluous to read the second reading of in parallel with as meaning parallel flow. If you look at figure 8, which is at page 86 of the record, and its corresponding specification description in column 3 at A94, it is described how the airflow enters the chamber at 34 and then takes two paths. The first path is the path that's going to be conditioned. It has a first sub-segment, 34A. Ambient air passes from outside the chamber into the first heat exchange path as it goes across the air-to-air heat exchanger. It then enters the second segment. The second segment goes out the bottom of the air-to-air heat exchanger and proceeds to take a 360-degree track around from the evaporator coil up through the heat exchanger again for the second heat exchange path and then back down towards the condenser. That second segment has two sub-parts. The first sub-part is 36A. That's known as the third sub-segment in the specification. There's a second sub-segment within the second segment, and that is 36B, and that's known in the claims in the specification as the fourth sub-segment. If you look at the description in column 3, you'll see that the importance of the bypass was to get ambient air from outside the chamber to the condenser without going through two different elements, the first being the air-to-air heat exchanger and the second being the evaporator coil. The only way to describe that in the claims, to get the claimed bypass, which they alleged was the novelty of the invention, was to have a separate airflow, which is identified as 62, not cross either the air-to-air heat exchanger or the evaporator coil before it merges with the condensed air after segment 36B. The second reading of in parallel with... In figure 8, where does the merger occur? Say that again? Sorry, John. In figure 8, where does the merger of 62 and the 36 occur? The merger of 62 and 36 would be after the line 36 before the condenser 14. Where the arrow is going on an arrow into the bottom? Yes, that arrow that's going through the bottom. That's where the two flows merge. It would be somewhere between the element that's the condenser and line 36. The way that column 3 describes it is that the fourth sub-segment merges with the second segment upstream from the condenser. That addresses the superfluous point. More to the point, it would be unsupported by the specification to have a geometrically parallel read for that. If you look at the way the figure is drawn and the board... Geometrically parallel read for what? For 62 and 36? The way the claim reads is the in parallel with the second iteration, the one we're talking about, says that the fourth segment is in parallel flow, is in parallel with the first and fourth sub-segments. 36B, which is the fourth sub-segment, is on a curve. It is on a curve. It has three parts at least. It has a perpendicular part, a part that's at an angle, and then a part that could be considered geometrically parallel. 36B is the entirety of the curve or is it just the curve point? If you look at the drawing. My read of 36B would be it's the entirety of it. It exits the heat exchanger and then takes a 90 degree clockwise turn and then flows down to the... You have other parts of the drawing that refers to that same air flow as 26B, 36A. It's referred to as the third sub-segment. When you have the curve at 36, there it looks like you do have air flows that are in parallel with each other, though they probably merge, but they do come together and they're parallel. But if you look at 26, I guess you can argue that that's... So 36 would be geometrically parallel, but how would 26B be geometrically parallel? How can it be either? Let me take a step back, Judge Reina. 36B, the fourth sub-segment, we do not believe requires a reading that is geometrically parallel. That is THC's position. So we would agree that 36B is not demonstrated as being geometrically parallel. It may have a portion that could be considered geometrically parallel and THC argues in their reply brief before this court in the gray brief that that's the support for why a geometrically parallel read is okay. We would submit that that's improper because THC has said that both the PTO and abatement have engaged in choosing specific embodiments over other embodiments in order to justify their claim construction, but that would be exactly what THC is doing, which is in violation of this court's holding in Revisio. In that instance, THC would be saying, this one segment of 36B is what we're claiming. That requires very expressive disclaimer or waiver or other indication that yes, we're claiming this one embodiment. But that's not even described in either that figure or the rest of the specification. There is no description of an embodiment where the entirety of the fourth subsegment is geometrically parallel with the fourth segment, 62. The first part of your question, Judge Reina, deals with element number 36. Element number 36 is defined in the- Let's go back. Look at 62 and then 36. This is a schematic here, but we do have arrows. Are you saying that those are not geometrically in parallel? I was just about to address that point. Element 36 is described in column 3 as the second segment. Column 3 goes on to describe what the second segment is. The second segment is not just the portion where the line 36 is drawn to. 36 is described as the second segment, which does the following. It exits the evaporator coil 18. If you're looking at figure 8 on A86, the evaporator coil is the rectangle with the ovals in it. When the air leaves that traveling down the path, once it leaves the evaporator coil, it becomes the second segment. Where is the air leaving the evaporator coil on figure 8? The dotted line that's passing out the bottom of 18. That line is not defined. Is that 36, 34B? That's 36. As it leaves the bottom of the evaporator coil, that is 36. That's clear in the specification in column 3 at lines, which is A94, at lines- It exits the evaporator coil, comes around, makes this nice roundhouse curve, right? That's correct. Comes across the top and then comes around the home stretch. That's correct. All of that is defined as the second segment. The specification makes it clear that the second segment leaves the evaporator coil- It has subsegments 36A and B. That's correct, Judge. The reason for defining the subsegments and claiming the subsegments is so that you can ensure that the bypass flow 62 doesn't cross either the air-to-air heat exchanger or the evaporator coil. Because by saying that it's in parallel flow relationship with 36B, you ensure that the merger of the ambient air with the conditioned air occurs after the second heat exchange path before the condenser 14. What about when the airflow leaves the condenser and then goes upward? That's on the left-hand side of figure 8, to where it goes upward and then hits 36A. Isn't that upward part also in parallel? It may be going in an opposite direction, but it's in parallel with 62. It could be in the embodiment that's shown in figure 8 that portions of the second segment would be in a geometric relationship with the fourth or bypass segment. But that would be a very specific read. If you were to read the claim limitation the way that they're describing, that the second iteration where it says the fourth segment is in parallel with the first and fourth subsegments. If you were to insert the word geometrically in there and say that the fourth segment is geometrically parallel with the first and fourth subsegments, that would require that what you see as 36B, which includes both the perpendicular angle and geometrically parallel portions, to cover only the one that would be geometrically parallel. That's not shown in the figure. To do that, you have to have the air that's shown as 36B leave the air-to-air heat exchanger going down in this picture. We have to be traveling down the page for it to leave the air-to-air heat exchanger and be geometrically parallel to 62. Is the air moving in pipes? How does the air make the curve? How does the air go around the circle? In practice, when you build this, the chamber has channels to direct the air through. Those pieces of plastic aren't exactly planar. And it keeps the channel 36 separate from the channel 62 until the merging point? I honestly don't know how they would intend to accomplish what they've shown in the figure or described in the claim when it becomes at this point where 36B merges with where the air that passes through 36B would ultimately merge with 62. A point that was made during our conversation, Judge Reina, was that they might be merging, but they might be slightly geometrically parallel. That brings another problem into how the construction would work where you would read the word geometrically into the claim. They're not asking for substantially geometrically parallel to this court. They're saying it's geometrically parallel. If it's geometrically parallel, they can't merge. The two air flows wouldn't be able to merge if they're geometrically parallel. Maybe not mix. They could merge, but maybe not mix. How could the two lines merge if they're not supposed to ever intersect? The two parallel things wouldn't intersect. There could be different channels and the channels connect or they could merge it back into the coil 14. The way the specification describes it, and specifically in claim 25 is described, that the fourth segment will merge with the air upstream from the condenser. Somewhere between the condenser 14 and where the air leaves the heat exchanger, there's supposed to be a merger of these two air flows. If they're supposed to be geometrically parallel, that doesn't seem to be practical and it's certainly not described in the specification how you would accomplish that. They also, in their reply brief, expressly disclaim figure number 11. Figure number 11 is the only one in which you could, is the only figure in the specification in which it's described where the air flow would not merge above the condenser. By disclaiming the only embodiment where the merger wouldn't necessarily happen is further emphasis that there is no geometric requirement in the second iteration. The evidence supporting the board's construction we've discussed, the obviousness finding supporting the construction where both reads are parallel flow is where the error would be. There is no error in this case because the board was proper in its construction of either or and then focusing on the parallel flow read for both parts of the claim term is the art that it applied. The art is very abundantly clear demonstrating that there was, it was known to have this type of dehumidifier and it was known to add a bypass and the reasons for it. All of this is described in the board's order and is specifically emphasized at pages 8, 9, A8, A9 and A14 of the board's decision. We respectfully would submit to this court that the construction was correct and that under that construction there was ample evidence for the board to, for a reasonable mind to conclude that these claims were obvious in light of the prior art. Thank you. Thank you Mr. Holloway. Next up Owen Ajak has a minute to respond. Thank you your honors. The main point I want to make is that in looking at the figure, the geometrically parallel construction that we are advocating is one, it's shown in the figure by 62 and 34B, there are sections of those air flows that are parallel. And second I want to reemphasize the redundancy if the either or language is adapted. The first, second and third segments, so first is 34, second is 36, and the third segments as well as the first, second and third and fourth sub-segments. What's the third segment? The third segment is 36 I believe. No that's, I'm sorry, that's the second. The third segment is the segment that's shown, it's not numbered on figure 8, it's the segment going into the condenser 14. I believe. Is it shown by an arrow directional sign? It's, and counsel is very helpful in pointing that out, it's not shown, it's the arrow that leaves the condenser. Right. And so it does not have. Below 36? Below 36, correct. Okay. Do you have a final thought counsel? My final thought your honors is that we respectfully request that this court adopt the construction that we advocate. Thank you. Thank you very much. Case taken under advisory.